Guess what kids, we're coming to the end. Okay, Case 14-2911, Dunderdale v. United Airlines, and Mr. Smith. Michael Smith, Your Honor. Good afternoon. Do you know, I now know three Michael Smiths myself. Really? Yeah. Well, I don't really know you, but I know Michael is a very common name. Your Honor, I represent Michael Dunderdale, the appellant in this court, and we're seeking that the court vacate the summary judgment that was entered and be manned back to the district court. A little history is that Mr. Dunderdale started working for United Airlines back in 1997 as a ramp service man. In December of 2002, he was injured and because of that injury, he was not able to perform certain duties and therefore was off until 2003, where he returned for full duty. In April of 2005, he got re-injured. However, he was placed on light duty. United had a job called a matrix, which was more or less an area that was set up for anybody who had restricted duties, so that somebody injured or had a disability could go into the matrix. Back in 2011, there was a decision made by United that the matrix, which previously was not under the collective bargaining agreement, became under the bargaining agreement so that it was open to bidding, and because it was open to bidding, it was sort of like a good job for a lot of seniority people that were able, because of their seniority, to knock out Mr. Dunderdale from his job. Now, United contends that Dunderdale could have applied for matrix lead or SOC lead and could have held these positions with some restrictions. Why didn't he apply for any of these other positions within United, and why does the availability of those positions not defeat his argument that the company failed? Well, because the company took the position that, with the ramp serviceman, and I can certainly read into the court what the position is, because of the position that he had, he could not perform the essential function of the restriction was to have nothing more than 35 pounds. But if the court would like me to read the description in there... No, no, I'm wondering why he didn't apply for any of the other positions within United. Basically, that was part of their interactive process, where the only thing they did was tell him how he could apply for certain jobs. It really was an assisting in getting other jobs that would meet the disability that he had. So it's not just incumbent, I think, for him to go applying for jobs. I believe it's incumbent in the interactive process that there should have been some interaction so that they could assist him in getting a job that would meet the disability that he had, as far as the lifting requirement. United listed all of Mr. Dunderdale's restrictions on page three of its brief. Is there evidence disputing the full list of restrictions? Because that list seems to be far more extensive than the simple lifting restriction that is portrayed in his briefs. Well, but basically, Your Honor, in the summary judgment, the argument really was on the essential functions of the job, which was the lifting. There certainly, as we pointed out, there were four positions that were no-bid positions, that because the rotation of every four months, there was an ability that Mr. Dunderdale could have been put into a classification of bullseye, he could have been put into a classification as auditor, he could have been put into classification of manpower, or safety. So there were some positions that were not part of the collective bargaining agreement that certainly United could have put him in because there was no requirement for seniority, nor were it subject to the collective bargaining agreement. If there are no questions, I reserve my time. Okay, thank you. Okay. Good afternoon, Mr. Jacobs. Good afternoon, Your Honors. Good afternoon, Your Honors, and may it please the court. My name is Mark Jacobs, and we represent Defendant Appley United Airlines. When United decided to include the matrix position in the seniority bidding process, how many disabled workers were displaced, and what percentage of them were outbid? I believe that when the change was made in 2011, I believe there were two. And two disabled workers? In 2011, when the bidding changed and when, based upon the union's comments to the employer, it was then all employees, there were two permanently disabled individuals who bid into the matrix, which then bumped out the two most junior disabled people who were working in the matrix, and Mr. Dunderdale was one of those two. You know, of strongest argument that Mr. Dunderdale has, I believe, is that accommodating disabled workers by assigning them to the matrix posed no hardship to United because the company had done so for more than ten years with no problems. If that's not the special circumstances that the Supreme Court contemplated in this. Well, I think that the factual predicate that you just offered is incorrect, Your Honor. The factual predicate is, as Ms. DeSantis testified at her deposition, and is in the record, that the union and employees were complaining to her. There was no grievance filed, admittedly, and it was never grieved because the change was made. But under the law, United did not have to wait to make that change. The union came forward to her and said, you need to complain about the situation. If there had been no complaint, if it had been done for some overt discriminatory reason to retaliate against somebody, for example, or to discriminate against somebody in a specific circumstances, I would suggest that may be the special circumstances in Barnett. But those are hypotheticals and those aren't the situations here. Rather, the plaintiff's seniority was insufficient to hold the position in the matrix where he had worked. He was not qualified for the other RAMP services positions that he's mentioned, and he admittedly did not participate in the reasonable accommodation process during the relevant time period. Your Honor asked a question about the record is clear, both in terms of the, that the list of restrictions is correct, both in the statements and facts and the deposition. Even though Mr. Dunderdale focused on the lifting restriction, he was restricted from lifting more than 30 pounds, bending, twisting, turning, stooping, kneeling, and driving United equipment. He may focus on lifting, but the restrictions were far broader than that. And that's extremely relevant in this case, because the issue here is about a RAMP service position, what we commonly think of as baggage handlers. And the fact is, is that although some of us may pack light and neat, and they carry on, most or many people don't, and by your chuckle maybe that's your one, but somebody has to move that baggage, and that is the essence of this job. And we have to start from the premise that the plaintiff was physically unable to do the vast majority of the duties and tasks of a RAMP service employee. Well, you know, United contends that he could have applied for the matrix lead or SOC lead. Is there evidence in the record that he could have actually attained those positions or those jobs that require seniority, for example, and would he have had enough seniority? Well, I think that, I do not recall in the record whether there is a specific statement that he had the seniority for the lead. I don't recall that. There is specific testimony in the record. In fact, Mr. Dunderdale testified at his deposition that he had performed the duties of the lead because from time to time he would be the fill-in lead when the lead was out. So he knew of the position and he knew the opportunity. Moreover, one of the significant problems that Mr. Dunderdale has in this case is that, in this case, he abdicated his responsibility to participate in the reasonable accommodation process. In 2011, the critical year, because that's when the change was made and he was no longer able to hold the regular matrix position, United twice sought him out to discuss accommodations, to participate in the reasonable accommodation process. Sent him letters asking him to do it early in that summer and then again in the fall and plaintiff did not respond. He refused to come in. He wouldn't participate in the accommodation process. So for him to now say, well, I don't know, you know, for the issue to then be, well, did we establish in the record that he didn't have the position, I think would be for Mr. Dunderdale to make a disingenuous statement. He's the one who caused the breakdown in the process because he refused to participate in it. He may think, as I believe he said in his brief, that it would have been a waste of time. It would have been futile, but how does he know that? He may have known what happened in 2005 when he went through a reasonable accommodation process, but things had changed significantly in 2011. In addition, we see that he went through the reasonable accommodation process in 2013 and soon thereafter he was, in fact, reinstated because his seniority would now hold. Plaintiff had the obligation to attend and participate in that process and he failed to do so. By not applying for another job, he caused the breakdown in that process and therefore under the EEOC versus Sears decision and the JILE versus United Airlines decision, he is about whether about these no-bid positions and what are the essential functions. I'd like to just touch on that for a moment. Plaintiff in his briefing, I believe, misconstrues the definition of essential functions. When we look at the definitions and the process to determine an essential function of a position, it becomes clear that plaintiff cannot perform the essential functions of the employer's judgment of what functions are essential and the written job description, which United has. United has clearly unequivocally enunciated those functions. The primary function and reason ramp service people work for those positions is to move baggage. Mr. Dunderdale tries to make two arguments. First, he says because he could work in the matrix, that means it wasn't an essential function. As this court held in Bassett versus Cook County, however, the fact that restructuring was feasible is not persuasive evidence that a function is not essential. Second, I believe that the court's decision in Miller versus Department of Corrections, the other Miller as opposed to the one we talked about earlier today, is particularly instructive. There, the employee who developed a serious sight impairment was terminated from her position as a correctional officer because there were certain functions she couldn't perform. One of them being highlighted in that case was the fact if there had been a riot in the prison, which is as infrequent a thing, God hopefully there are never, but it is as infrequent as we can imagine, she couldn't have been able to participate. Similarly, Mr. Dunderdale tries to argue that the obligation to carry bags, even from these other positions, would be not essential because they would happen infrequently. Just as Miller held that that isn't the test, so too should that apply here, and Miller should be the positive, dispositive. If there are any questions, I'll let the court affirm the judgment and the decision of Judge Cheng. Thank you and have a good afternoon. Thank you, Mr. Jacobs. Thank you, Your Honors. And Mr. Smith. Your Honor, I understand that in general, this court and most courts support the idea that the collective bargaining agreement isn't really covered by the ADA, American Disability Act. However, in U.S. Airways versus the Barnett case, which I think referred to, there could be special circumstances, and certainly within the concept that we had one area that was specifically set up, as much as counsel argues that it was a business decision, it seems to be that the business decision could have allowed my client to stay within the concept of the matrix. And again, he points out that the union had come to, united, and indicated that they believed that this needed to be part of the collective bargaining agreement. However, as we point out on labor, had testified that she was just aware that the question was made, why can't we have other employees work in the matrix? That didn't amount to a grievance, it didn't amount to a collective bargaining issue, to where during their agreement, a decision was made, let's get together, let's modify this collective bargaining agreement. It became part of the bargaining agreement because united chose to do it. It wasn't mandated that they do it. It was required, it wasn't required, it was just a personal decision that DeSantis had made, because she wanted them to see that everything would be part of collective bargaining agreement. But that is not a business decision. Counsel also argued the essential functions, which under 29 CFR 160, it actually goes into the essential functions of a job, which means the fundamental job duties of the employment position of the individual with a disability, holds or desires, the term essential function does not include marginal function. It would seem to me with the job description that we gave, that the baggage as far as over 70 or up to 70 pounds is not even in the job description. So it just seems that that would not be an essential function. The court also had listened to the other case with EEOC versus AutoZone, which talked about the team process. There certainly is more than one employee there that would be working with baggage and it seems to be if there's something that's over 35 pounds, that there's going to be somebody right there with him that can certainly shift it. So I can't see that the essential function should fall on my client, that he's not qualified for this position just because of that. I think if there's no questions I'm finished. I think we're finished. All right, thank you very much. Thank you very much, Mr. Jacobs. Thank you very much, Mr. Smith. The case will be taken under advisement and we're all going to go home. This court is in recess until tomorrow morning at 930.